## PIKE COUNTY.

January Term, 1881, No. 234.      October 1, 1883.

## Quick *v.* Van Auken.

1. Where there were eight judgments against one person, some of which were held by the plaintiff in his own right and others by his wife, it was competent for the parties, plaintiffs and defendant, to settle by mutual agreement the form of the issue that should determine how much, if anything, the defendant owed on the aggregate amount of the judgments.

2. To change or alter a written agreement, the proof must be clear, precise, and indubitable.

3. It is not error to submit to the jury evidence of a subsequent parol agreement between the parties qualifying a chattel mortgage and suspending the right of foreclosure unless with the assent of a coöwner and the mortgagor.

4. Where the holder of a chattel mortgage made under the laws of another State upon a horse sells the horse contrary to agreement, for an inadequate price, without the knowledge or consent of the owner, himself becoming the purchaser, and thereafter holds and uses the horse as his own for nearly two years, the owner is not bound to accept a tender of the horse at the price for which he was sold, but has the right to treat the mortgagee as a wrong-doer, and hold him for the value of the horse at the time of the illegal sale.

Before Mercur, C. J.; Gordon, Paxson, Trunkey, and Sterrett, JJ.; Green and Clark, JJ., absent.

Error to Court of Common Pleas of *Pike County.*

Peter A. L. Quick, and Peter A. L. Quick and Catharine, his wife, in right of said Catharine against D. M. Van Auken.

The plaintiffs held eight judgments against defendant, amounting in the aggregate to $6,670. A *fi. fa.* having been issued upon one of these judgments, the defendant claimed to have a defense to all of them, and petitioned the Court to open the judgments and for equitable relief. Whereupon the parties entered into the following agreement, which was filed of record :

"Issue upon judgments No. 104, December Term, 1877 ; No. 32, May Term, 1877 ; No. 61, February Term, 1878 ; No. 62, February Term, 1878 ; No. 63, February Term, 1878 ; No. 64, February Term, 1878 ; No. 57, December Term, 1874 ; and No. 51, February Term, 1877 ; which are opened. The whole to be tried under one issue to May Term, 1880, the notes to stand as a declaration, and the plea of payment, set-off, &c., to stand for the plea. The questions raised by the affidavit to open the judgments to be the questions investigated."

The affidavit to open the judgments set out, *inter alia,* that in March, 1879, the defendant executed a chattel mortgage to George H. Rowland and Peter A. L. Quick for $6,000, upon a stallion ; that there was a written agreement (setting out its terms) ; that this agreement was "so far modified that no part of the money so realized shall be under the direction of said Van Auken until the judgments of the said first part and of Catharine A. Quick are fully paid, and that said stallion shall not be sold before the 12th day of April, 1878, by private sale or under proceedings of foreclosure, and on said 12th day of April (or any time thereafter), only for such price as shall be agreed upon by the parties, or a majority of them ;" that, without the knowledge of the defendant or Rowland, Quick sold the stallion in October, 1878, and, "at this illegal and fraudulent sale, became the purchaser ;" and that the stallion was of greater value than the indebtedness.

Upon the trial in the court below, the following facts appeared :

Defendant in these judgments had, under the laws of New York, executed and delivered a chattel mortgage to Peter A. L. Quick and George H. Rowland, upon a certain bay stallion, called "William M. Rysdyk," to secure the payment of judgments held against him by said Quick and by said Rowland ; and, by certain agreements in writing, it was agreed that in case of the sale of said horse,

[Quick *v.* Van Auken.]

the money arising from said sale should be applied, *pro rata*, to the payment of judgments as the same were owned by George H. Rowland, Peter A. L. Quick, and Catharine A. Quick, on the 10th day of May, 1876; that said stallion should not be sold before the 12th day of April, 1878, at proceedings under foreclosure of a certain chattel mortgage made by the said Van Auken, and, on said day, only for such price as should be agreed upon by the parties to said agreement, or a majority of them. These agreements were signed by G. H. Rowland, P. A. L. Quick, and D. M. Van Auken.

*Mr. Van Auken* testified that there was a further agreement, not in writing, that the horse should not be sold at any time in the future, unless he and Quick agreed to the price.

On October 26, 1878, the plaintiff, P. A. L. Quick, sold the stallion and bought it in for $1,050, without the knowledge or consent of defendant. The defendant asserted that the price was inadequate, and the plaintiffs denied it. There was a conflict of testimony as to the value of the horse at the time of the sale.

The defendant being on the stand, plaintiff proposed to ask him whether Mr. Quick did not offer to "sell back this horse to you if you would pay to him the sum of $1,050, just what he bid the horse off at, and, in addition thereto, whatever expense the horse has been to him over and above his earnings." The Court overruled the offer.

The Court below charged the jury, *inter alia*, as follows:

"The defendant in these judgments, alleging that he had an equitable defense, made application and procured the decree of this court opening these judgments and letting him into a defense. That defense consists substantially in the allegation that a certain stallion, known as 'William M. Rysdyk,' had been received by the plaintiffs as collateral security for these judgments; that the plaintiff, Quick, had disposed of that stallion, contrary to the understanding and agreement between the parties, at an inadequate price, and that Mr. Van Auken, the defendant in the judgments, is entitled to a credit upon these judgments to the extent of the value of that horse, as the evidence shall have established it before you.

There are certain questions of law which it becomes our duty to pass upon, and then there are certain questions of fact which we will refer to you, and which it will become your duty to pass upon; but before delivering the general charge, we propose to call your attention to

[Quick *v.* Van Auken.]

certain points which have been submitted on the part of the plaintiffs in the judgment, and to give you such instructions as we deem proper and pertinent.

We have been requested to instruct you:

'1. The defendant having given to the plaintiff and Rowland a chattel mortgage upon his horse, and said mortgage being due and unpaid, the plaintiff had a legal right to foreclose said mortgage and sell said horse, at any time, under the laws of the State of New York, and such sale would pass a perfect title to the said horse; and the plaintiff would be obliged to account to the said defendant for all the proceeds of said sale, if said mortgage was held as collateral to the judgments included in this issue.'

This proposition we affirm, unless the parties, by a valid agreement, qualified the chattel mortgage, and by such agreement suspended the legal right of Quick to foreclose without the assent of Rowland and Van Auken.

We refer that matter, as a question of fact, to the jury, which, under the evidence, is to be ascertained by them.

'2. After such agreement was executed and delivered as collateral to any indebtedness of defendant to plaintiff and Rowland, they or either of them had the right to control it, and any agreement of Quick or Rowland to stay the proceeding, or not to sell without the consent of Van Auken, was void, unless made upon a valid consideration; and, there being no proof of any consideration passing from Van Auken to Quick for such an agreement, the same was void, and Quick had the right to foreclose without the consent of Van Auken.'

This proposition we will be obliged to negative, because it asks us to settle a question of fact upon which there is evidence. You are warranted in taking all the evidence in the case, and you will ascertain from it whether there was an agreement between Quick and Van Auken for a valid consideration; and, in so doing, you are to take into account the various agreements which they made from time to time, and the understanding that existed between them in regard to the control and management of this horse, which remained in Van Auken up until 1878, that, while the chattel mortgage had been executed, he was allowed to retain the possession and control, and to receive the proceeds of the use of that horse up and until 1878, when he turned over those proceeds to Quick under an agreement to which we shall directly call your attention.

' 3. That by the proceedings in the State of New York, Quick either obtained a good title to the horse—in which

[Quick v. Van Auken.]

case the sale was valid, and the purchase-money is to be accounted for by him—or the sale was void for fraud, in which case no title passed to Quick, and the horse is still the property of Van Auken, in which case the defendant cannot claim any allowance for the value of the horse as a set-off, or have the same apply upon the judgments in this issue.'

This proposition, being in the alternative, we will be obliged to negative. There might have been a good and valid sale of that property, by which the title passed to Quick, under the foreclosure of the mortgage, but if a proper and fair agreement existed between these parties that no such sale should be held, except upon the consent of two of the parties to the agreements accompanying that mortgage, and Quick in bad faith went on and sold that horse without notice to Van Auken—if you find from the evidence that it was given as collateral security, and both parties testify to that—then, as a matter of law, the defendant would be entitled to recover or have set off against these judgments such amount as you shall find the value of that horse to have been at the time it was sold on the 26th of October, 1878.

'4. Under the evidence the only amount to be applied from the sale of the horse is that part of the $1,050, for which the horse sold, which belonged to Quick, under the agreement of Quick, Rowland, and Van Auken.'

Having already referred this question to you, as a question of fact under the evidence, and having negatived it by the preceding answer, we must answer this proposition in the negative.

'5. Van Auken, the defendant, cannot take advantage of any want of notice from Quick to Rowland of the sale.'

This proposition, as an abstract principle of law, is affirmed.

'6. As far as appears in this case, the foreclosure of the mortgage upon the horse of defendant was legal, or in accordance with the laws of the State of New York, and if this is so, otherwise the burden of proof was upon the defendant to show it.'

This proposition we affirm.

'7. The foreclosure sale being valid and in accordance with the law, the fact that the defendant had no notice of such sale does not permit him to claim any allowance, even if the jury should find that the horse sold for less than his full value.'

This proposition we negative. We have already said to you that if the evidence satisfies you that there was an

[Quick *v.* Van Auken.]

agreement between these parties, by which this horse was transferred to Quick, and to his control as collateral security for the payment of these judgments, and he, in bad faith, sold that horse without notice to Van Auken, Van Auken is entitled to a credit upon the judgments for the value of that horse, as the evidence shall establish it in your judgment.

'8. To change or alter a written agreement the proof must be clear, precise, and indubitable.'

This proposition we affirm. The law holds that, when parties have reduced their agreements to writing, the writing is not only the best, but the only evidence of the agreement of the parties, unless fraud or mistake is shown in the execution of that paper.

The allegation of the defendant is that a subsequent agreement was made in reference to this point in the case, and we have simply to say to you that the parties were competent to make a subsequent agreement, and that if they made a good and valid agreement for a valuable consideration, it was binding upon the parties, notwithstanding they may have previously executed a written contract.

'9. The defendant having set up in his affidavit, which forms the declaration in this issue, that the sale of the horse by the plaintiff under the foreclosure was illegal and fraudulent, and if the plaintiff became the purchaser at such illegal and fraudulent sale, he can not claim the value of such horse in this issue.'

This proposition we negative.

In considering the question as to the agreement which was entered into between these parties, you are to look at all the evidence, as we have said to you, relating to the conversations and the actions of the parties, Van Auken, Quick, and Rowland, in their going to Seneca county, New York, in their making various agreements, and in their renewing from time to time this mortgage. We refer to you the question of fact as to whether this horse was delivered to Mr. Quick and put into his control, or *quasi* control—because Mr. Van Auken in effect controlled him—simply as collateral security for the money which Mr. Quick advanced for Mr. Van Auken's use upon the judgments which have been given in evidence. If you shall find that that was the fact, then [we refer to you the next question as to whether Quick, in bad faith, and in contravention of his agreements, sold that property and reduced it to his possession for an inadequate price, without the consent and knowledge of Van Auken.

If he did, we say to you, as matter of law, that Van

[Quick *v.* Van Auken.]

Auken is entitled to a credit upon these judgments to the extent of the value of that horse, as it shall be established by the evidence. As you shall find these two facts, you will decide this case under the instructions we have given you."]

MAY 21, 1880.—Jury find credit for defendant for the sum of $4,666 66⅔, which, by computation, agreed upon by counsel, was made a verdict for plaintiff for $1,959 88 upon which judgment was entered.

Plaintiffs then took out a writ of error, assigning as error that the Court erred in permitting to be tried, without formal pleadings or issue, the matters appearing on the record, in permitting to be tried the question of the amount due upon several judgments owned by distinct parties; in treating the eight judgments as opened; in letting in matters of defense subsequent to the judgments; in rejecting plaintiffs' offer to prove that he offered to sell back the horse to defendant for $1,050 and the difference between his earnings and expenses; in permitting defendant to prove the condition of the horse, its description and value; in permitting defendant to prove a parol agreement that the horse should not be sold, except with the consent of two of the parties; in the answer to the first, second, third, fourth, seventh, eighth, and ninth points, and in that portion of the charge inclosed between brackets.

*George M. Dallas* for plaintiffs in error.

The proceedings are irregular, and let in matters subsequent to the judgments: Curtis *v.* Slosson, 6 Barr, 265.

Considering this as an equitable proceeding, the offer on the part of the plaintiffs to do equity should have been admitted.

If the sale was illegal and fraudulent, the mortgagor should have given notice of his disaffirmance of the sale.

The writing alone must be taken as the evidence of the agreement, and should not be varied by parol.

*George G. Waller* for defendant in error.

The parties had a right to make the agreement to try several judgments in one issue.

If plaintiffs took wrongful possession of the horse, they cannot avoid the responsibility by offering to return him. Fox *v.* Northern Liberties, 3 W and S., 103, and the effect would be the same where the value of the property taken and sold is set off in a judgment: Christy *v.* Sill, 14 Norris, 380.

[Quick *v*. Van Auken.]

Parol evidence is admissible to vary written instruments.

OCTOBER 1, 1883.—The opinion of the Court was delivered by STERRETT J.:

The defendant, claiming to have a defense to eight judgments held by the plaintiffs, petitioned the Court for equitable relief, and thereupon a written agreement was entered into by the parties that an issue, embracing all the judgments, should be framed for the purpose of determining how much, if anything, was due thereon. The judgments, aggregating over $6,000, were opened by the Court, and it was agreed that the whole should "be tried under one issue to May term, 1880, the notes to stand as a declaration, and the plea of payment, set off, &c., to stand for a plea. The questions raised by the affidavit to open the judgments to be the questions investigated." Notwithstanding some of the judgments were held by the husband in his own right, and the others by his wife, it was clearly competent for the parties, plaintiffs and defendants, to settle, by mutual agreement, the form of the issue that should determine how much, if anything, the defendant owed on the aggregate amount of the judgments. It is true a separate issue might have been framed as to each judgment, but that would have been attended with increased trouble and expense, which it was doubtless the desire of the parties to avoid. After trial on the merits, technical objections to the issue come with very bad grace from the party whose success was not equal to his anticipations. The several assignments of error relating to the issue, its alleged irregularity, &c., are not sustained.

The question presented by the issue was one of fact, exclusively for the jury, and their verdict should not be disturbed unless manifest error intervened during the course of the trial.

As stated by the learned judge in his charge, the defense substantially was, that a valuable stallion, which had been received by the plaintiff, Quick, as collateral security for the judgments, had been disposed of by him, contrary to the understanding and agreement of the parties, for a grossly inadequate price, and consequently the defendant in the judgments is entitled to credit thereon for the full value of the horse thus wrongfully disposed of. Testimony tending to prove these allegations was introduced, and it also appeared that the horse in question was the subject of a chattel mortgage to

[Quick v. Van Auken.]

Quick, the plaintiff, and one Rowland, in the State of New York. In view of the defense set up and the testimony introduced to sustain it, the plaintiffs requested the Court to charge that "the defendant having given a chattel mortgage on his horse, and the mortgage being due and unpaid, the plaintiffs had a legal right, under the laws of the State of New York, to foreclose the mortgage and sell the horse at any time, and such sale would pass a perfect title to the horse ; and plaintiffs would be obliged to account to defendant for the proceeds of sale, if said mortgage was held as collateral to the judgments included in this issue." This controlling proposition was affirmed by the Court unless the jury should find that the parties, by a valid agreement, qualified the chattel mortgage and thereby suspended the legal right of Quick to foreclose the mortgage without the assent of Rowland and Van Auken.

There was some testimony tending to prove the alleged agreement qualifying the terms of the chattel mortgage, and the same was submitted to the jury, in connection with the foregoing answer to plaintiffs' point, in which reference is made to the agreement. The case was thus made to turn upon the question of fact, whether such qualifying agreement was made or not. The verdict conclusively proves that the jury found the fact as alleged by the defendant. Other points relating to the alleged agreement, and the legal effect thereof, were submitted to and correctly answered by the Court. The testimony tended to prove mutual promises by one party to the other, in regard to the time and manner of selling the horse, in case a sale should become necessary. This evidence was for the jury, and if they found that such mutual promises were made, they were a sufficient consideration for the agreement alleged and relied on by the defendant. The rule of law, as to the nature and degree of evidence necessary to change or alter a written agreement, was properly given to the jury. They were instructed that " the proof must be clear, precise, and indubitable." The subject of complaint in the 11th specification is the refusal of the Court to permit plaintiffs to prove that, nearly two years after the sale, they offered to return the horse to the defendant. If it was true, as alleged by defendant, that Quick, in bad faith, and in contravention of their agreement, sold the horse for an inadequate price, without defendant's knowledge or consent, and thereafter held and used him as his own for nearly two years, the defendant was not bound to accept the alleged

[Bright *v.* The Mountain City Banking Company.]

tender. Under the circumstances, he had a right to treat Quick as a wrong-doer, and hold him for the value of the horse at the time of the illegal sale; and so the learned judge in substance instructed the jury. We discover no error in the admission or rejection of evidence. The testimony was such as to warrant the Court in submitting to the jury the several questions of fact above referred to, and that appears to have been done in such a way as to be free from substantial error.

Judgment affirmed.